N THE COURT OF APPEALS OF IOWA

No. 18-1812
Filed March 20, 2019

IN THE INTEREST OF B.A.,
Minor Child,

L.F.-H., Mother,
        Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.

        A mother appeals from the termination of her parental rights.  **AFFIRMED.**

        Carrie E. Coyle of Carrie E. Coyle, PC, Davenport, for appellant mother.

        Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

        Brenda L. Drew-Peeples of Drew-Peeples Law Firm, Davenport, guardian ad litem for minor child.

        Considered   by   Potterfield,   P.J.,   and   Tabor   and   Bower,   JJ.

**POTTERFIELD, Presiding Judge.**

The mother appeals the termination of her parental rights to B.A., born in May 2017. The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(d) and (h) (2018).[1] On appeal, the mother purports to challenge the statutory grounds for termination. Additionally, she argues she should have been given additional time to work toward reunification and termination is not in B.A.'s best interests.

We review termination proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We are not bound by the factual findings of the district court, but we do give them weight—especially when assessing witness credibility. *Id.* "Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

When the juvenile court terminates parental rights on more than one ground, we may affirm if we find any one of the grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Here, we focus on the elements of paragraph (h), which allows the court to terminate when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

---

[1] The parental rights of the child's legal father and biological father were also terminated. No father appeals.

The mother does not dispute the first three elements have been proved. Additionally, she does not claim—just as she did not claim before the juvenile court—that B.A. could be returned to her care at the time of the termination trial. *See id.* at 707 (defining "at the present time" as "at the time of the termination hearing"). Rather, the mother argues the State failed to make reasonable efforts to reunite her with B.A., which implicates the juvenile court's application of the fourth element. *See In re C.B.,* 611 N.W.2d 489, 493 (Iowa 2000) ("[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. . . . The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent.").

We assume without deciding the mother has preserved her reasonable-efforts argument. *See In re S.R.,* 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (recognizing the parent has a duty to demand services other than those provided in order to preserve the issue of reasonable efforts for appellate review); *see also In re C.H.,* 652 N.W.2d 144, 147 (Iowa 2002) (requiring a parent who "is not satisfied with [the department of human services'] response to a request for other services" to "come to the court and present this challenge"). Still, we cannot find the State failed to make reasonable efforts at reunification. This mother has been continuously involved with the department since at least September 2015 with her older child, to whom the mother's rights were terminated in July 2017. *See In re I.A.,* 17-1203, 2017 WL 4844352, at *4 (Iowa Ct. App. Oct. 25, 2017). The mother's only complaint regarding services is that she experienced some delay in receiving a Parent Partner and only received one in mid-July 2018—a

couple of weeks before the first day of the termination hearing. But the earliest reference that we have found in the record of the mother's request for or interest in a Parent Partner came in late May 2018. The mother only requested the partner after more than thirty months of receiving services. We acknowledge the six-week delay between her expressing an interest in and then receiving the service, but we cannot say this delay prevented the State from fulfilling its mandate to provide services to enable the mother to care for B.A., especially in light of the many other services that the mother was offered and in which she participated.

Next, the mother maintains the juvenile court should have given her additional time to work toward reunification. *See* Iowa Code § 232.104(2)(b) (allowing the court to delay permanency for six months if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). As the juvenile court did, we recognize the significant progress the mother made throughout the time she was involved with the juvenile court. But we find it telling that those whom the mother called to testify in her case at the termination trial—individuals who worked closely with the mother—seemed reluctant to say the mother would be able to care for B.A. after an extension of time. The mother's therapist, with whom she has a positive and trusting relationship, noted the mother's improvement in areas of rational thought and being able to self-calm but also recognized that the mother can still get "hyper-triggered" when she is confronted with change or feels that she is being attacked. One such incident occurred between the two days of the termination trial—on August 10—when the mother was told her friend was not allowed to remain at

the mother's supervised visitation with B.A.[2]  When asked if she believed the mother could begin caring for B.A. in ninety days, the therapist testified, "With proper support, I believe she could, but she would have to have a support team in place."  The service provider, who had worked with the mother long-term and whom the mother considered a support, testified she did not believe B.A. could be safely parented by the mother at the time of the termination trial and declined to say the mother could begin caring for B.A. if given additional time.  She testified:

> I just don't know how to answer that for the mere reason that I've been with [the mother] for two-and-a-half years.  I've watched her struggle up and down.  I think she's made some vast improvements, but I'm not a time machine to be able to tell you, that, yeah this is going to change with time.  I apologize for my answer.  I just don't know really honestly how to answer that.

When the mother's attorney pressed the provider on her answer to the question, the provider noted that while the mother's mental health and ability to process change has improved, the fact that the outbursts continued to occur prevented her from saying B.A. could be safely parented by the mother.  Additionally, both the therapist and the provider indicated that the mother's ability to process negative information "takes time."  The provider indicated that when she spoke with the mother on Monday following the incident on Friday—approximately three days later—the mother was unable to say what choice she "could have made

---

[2] According to the report of the worker supervising the visit, after the worked informed the mother her friend had to leave, the mother became upset and verbally aggressive; she refused to hand B.A. to the worker and ran outside with him in her arms while she was agitated and trying to get in contact with her therapist.  The mother informed the worker she could call the cops because the worker was not otherwise getting B.A. away from her.  As the worker began to dial 911, the mother, still holding B.A., ran past the worker back into the home and locked the door.  The mother came outside with B.A. after a couple of minutes and helped to put B.A. in the worker's car, but she continued to scream at the worker and her therapist, with whom she was on the phone.

that would have had a different outcome. . . . She didn't completely process on Monday, but she was calm. She was able to have the conversation. So it takes time for her. So that's a repeat conversation that I will continue to have with her."

We acknowledge that the child's guardian ad litem asked the court to give the mother additional time to work toward reunification with B.A., but we agree with the juvenile court that an extension is not appropriate here. As the juvenile court stated:

> The court can't predict if [the mother] will improve with more time or [if] this is the best she can be. . . .
> . . . .
> . . . [T]he court is not convinced that she will be able to safely parent a small child in the future. To say so is speculation and disregards the fact that well over two years has made [the mother] a safer parent, but not eliminated all dangers.

Finally, the mother maintains termination of her parental rights is not in B.A.'s best interests. *See* Iowa Code § 232.116(2). The mother and B.A. share a bond. But B.A. is integrated into his foster family, with whom he has lived since being discharged from the hospital following his birth. The foster family has already adopted B.A.'s older half-sister, and they have indicated their intent to adopt B.A. as well if the mother's rights are terminated. *See id.* § 232.116(2)(b). We conclude termination of the mother's parental rights is in B.A.'s best interests.

For these reasons, we affirm the termination of the mother's parental rights.[3]

**AFFIRMED.**

---

[3] The mother does not argue a permissive factor applies, so we do not consider this step. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (declining to address a step not disputed by the parent); *see also In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (confirming it is the parent's duty to establish that a permissive factor of subsection 232.116(3) applies).